```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA

  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,          )  Criminal Action
                                   )  No. 21-204-04
vs.                                )
                                   )
JACK JESSE GRIFFITH,               )  July 29, 2021
                                   )  9:30 a.m.
              Defendant.           )  Washington, D.C.
                                   )
  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF PLEA COLLOQUY**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT CHIEF JUDGE**

*(Parties appearing via videoconference and/or telephonically.)*

<u>**APPEARANCES**</u>:

```
FOR THE GOVERNMENT: MITRA JAFARY-HARIRI
                    DOJ-USAO
                    211 W. Fort Street
                    Detroit, MI 48226
                    (313) 226-9632
                    Email: mitra.jafary-hariri@usdoj.gov


FOR THE DEFENDANT:  H. HEATHER SHANER
                    1702 S Street, NW
                    Washington, DC 20009
                    (202) 265-8210
                    Email: hhsesq@aol.com

ALSO PRESENT:       Masharia Holman, Pretrial Agent

Court Reporter:     Elizabeth Saint-Loth, RPR, FCRR
                    Official Court Reporter
```

***This hearing was held via videoconference and***
***telephonically and is, therefore, subject to the limitations***
***associated with the use of technology, static interference, etc.***

Proceedings reported by machine shorthand, transcript
produced by computer-aided transcription.

1              **P R O C E E D I N G S**

2              THE COURTROOM DEPUTY:  Matter before the Court,

3     Criminal Case No. 21-204-04, United States of America versus

4     Jack Jesse Griffith.  Your Honor, for the record, pretrial

5     agent Ms. Holman is joining us via telephone.

6              THE COURT:  Okay.

7              THE COURTROOM DEPUTY:  Counsel, please state your

8     names for the record, starting with the government.

9              MS. JAFARY-HARIRI:  Good afternoon -- or good

10    morning.  I'm sorry.  Mitra Jafary for the United States.

11             THE COURT:  Yes.  Good morning.

12             MS. SHANER:  Good morning, Your Honor.

13    Heather Shaner for Jack Griffith.

14             THE COURT:  All right.  Good morning, Ms. Shaner.

15             So I understand that Mr. Griffith -- I just lost

16    him on the screen -- the video.

17             MS. JAFARY-HARIRI:  I see him, Your Honor.

18             THE COURT:  Can you see the Court?

19             MS. JAFARY-HARIRI:  Yes.

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Okay.  They are now back.  Okay.

22    That's weird.

23             So I understand that Mr. Griffith plans to enter a

24    plea of guilty to Count 5 of the indictment this morning.

25    Is that correct, Ms. Shaner?

1          MS. SHANER:  Yes, that's correct.  And he agrees

2     to enter that plea on video and waive his right to be in

3     person in front of the Court.

4          THE COURT:  All right.  Well, under the CARES Act,

5     for pleas and sentencings I have to make a special finding

6     that, in a particular case, for specific reasons, a plea or

7     sentencing cannot be further delayed without serious harm to

8     the interest of justice.  So for purposes of making that

9     finding here today, I will find that the defendant seeks to

10    resolve the case as promptly as possible, without waiting

11    for a period when it will be fully safe to travel and be

12    physically present in the courtroom.

13         Ms. Shaner, do you have anything to add to that

14    finding for why we are proceeding today with a

15    videoconference hearing rather than being physically all

16    present in the courtroom?

17         MS. SHANER:  This case has been pending for

18    several months, and Mr. Griffith has been under a lot of

19    stress as a result of the pendency of this case and he wants

20    to do everything he can to cooperate with law enforcement

21    and to move forward with this matter without having to wait

22    until COVID is resolved.

23         THE COURT:  All right.  So does the government

24    have anything else to add to the findings for why we are

25    proceeding using videoconference technology?

1           MS. JAFARY-HARIRI:  No, Your Honor.  Thank you.

2           THE COURT:  All right.  I would like to remind

3      anyone listening to this hearing on the public conference

4      line that, under my standing order 20-20, recording and

5      rebroadcasting of court proceedings, including those held by

6      videoconference, is strictly prohibited.  Violations of

7      these prohibitions may result in sanctions, including

8      removal of court-issued media credentials, restricted or

9      denial of entry to future hearings, or other sanctions

10     deemed necessary by the presiding judge.

11          All right.  Mr. Griffith, during this plea hearing

12     I am going to be asking you a series of questions to ensure

13     that you understand your rights and the rights that you are

14     going to be giving up by entering this plea of guilty.  I

15     need to also assure myself that your guilty plea is

16     voluntary.

17          If at any time I ask you a question that you want

18     to think about, you want to talk to Ms. Shaner about, don't

19     hesitate to let me know that you need time to do that.

20          THE DEFENDANT:  Yes, Your Honor.  Thank you.

21          THE COURT:  All right.  Before we proceed any

22     further, I will ask my courtroom deputy to administer the

23     oath to you, Mr. Griffith.

24          THE COURTROOM DEPUTY:  Mr. Jack Jesse Griffith,

25     could you please raise your right hand.

```
1              THE COURT:  Please raise your right hand.

2              THE DEFENDANT:  Yes, ma'am.

3              (Whereupon, the defendant was sworn.)

4              THE DEFENDANT:  I do.

5              THE COURT:  Mr. Griffith, you are now under oath.

6    This means if you do not answer my questions truthfully, you

7    could be prosecuted for perjury or for making a false

8    statement; and any false answers you give to me here today

9    could be used against you in that prosecution.

10             Do you understand?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  So, Mr. Griffith, what is your full name?

13             THE DEFENDANT:  Jack Jesse Griffith.

14             THE COURT:  All right.  There is an a/k/a, also

15   known as, in the Court filings with the name of Juan

16   Bibiano.  Where does that a/k/a come from?

17             THE DEFENDANT:  I had a nickname of "Juan" in

18   middle school --

19             THE COURT:  I can barely hear you.  Could you

20   speak up, please?

21             THE DEFENDANT:  Yes, ma'am.  I'm sorry, Your Honor.

22             Bibiano was a family name, my mom's last name; and

23   I never met my father.  Juan was just a nickname, so I just

24   put those together.

25             THE COURT:  I see.  And do you use that name among
```

1      family and friends, Juan Bibiano?

2                  THE DEFENDANT:  Among friends, yes, ma'am.

3                  THE COURT:  Okay.  And how old are you,

4      Mr. Griffith?

5                  THE DEFENDANT:  I am 26 years old, Your Honor.

6                  THE COURT:  And how far did you go in school?

7                  THE DEFENDANT:  Two years of college.

8                  THE COURT:  And what did you study?

9                  THE DEFENDANT:  Audio production at the Art

10     Institute of Tennessee.

11                 THE COURT:  All right.  And do you have any

12     difficult reading or writing?

13                 THE DEFENDANT:  No, ma'am.

14                 THE COURT:  And where were you born, Mr. Griffith?

15                 THE DEFENDANT:  I was born in Killeen, Texas, Your

16     Honor.

17                 THE COURT:  Killeen, Texas, near Fort Hood?

18                 THE DEFENDANT:  Yes, ma'am.

19                 THE COURT:  If you are not a U.S. citizen, do you

20     understand that conviction of this offense may result in

21     deportation, exclusion from the United States, or denial of

22     citizenship under our immigration laws?

23                 THE DEFENDANT:  Yes, Your Honor.

24                 THE COURT:  Have you taken any alcohol or drugs in

25     the last 48 hours, or any medicine that could affect your

1    ability to understand what's going on here today?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  Have you received any treatment

4    recently for any type of mental illness or emotional

5    disturbance or addiction to narcotic drugs of any kind?

6              THE DEFENDANT:  No, Your Honor.

7              THE COURT:  Mr. Griffith, are you completely

8    satisfied with the services of your attorney in this case?

9              THE DEFENDANT:  100 percent, Your Honor.

10   Thank you.

11             THE COURT:  And do you feel that you have had

12   enough time to talk with Ms. Shaner to discuss the case, the

13   evidence against you, the plea offer in the case, and

14   whether or not you should accept it?

15             THE DEFENDANT:  Yes, ma'am, I do.

16             THE COURT:  Ms. Shaner, do you have any question

17   about Mr. Griffith's competency to enter a plea today?

18             MS. SHANER:  No, Your Honor.  I find he has been

19   fully competent since I met him.

20             THE COURT:  And does government counsel have any

21   question about Mr. Griffith's competency to enter a plea

22   today?

23             MS. JAFARY-HARIRI:  No, Your Honor.

24             THE COURT:  All right.  I do find that

25   Mr. Griffith is responding appropriately to my questions.

1    He seems to understand fully what's going on, so I do find

2    that he appears competent and capable of entering an

3    informed plea so I will proceed with the rest of the plea

4    hearing.

5         The next stage of the hearing, Mr. Griffith, is

6    that I will explain to you the constitutional rights that

7    you hold under our U.S. Constitution that you would be

8    giving up by entering a plea of guilty today.  Some of these

9    questions may sound a little legalistic; so, again, if you

10   have any question about the question I am asking, you want

11   me to repeat it, just let me know.  If you want a moment to

12   talk to Ms. Shaner or to think about your answer, don't

13   hesitate to let me know that; and I will give you time to do

14   so.

15        Do you understand?

16        THE DEFENDANT:  Yes, ma'am.  Thank you, Your Honor.

17        THE COURT:  All right.  Now, you have a right to

18   plead not guilty to the charges in the indictment against

19   you and to have a jury trial in this case.

20        If you went to trial on all four charges in the

21   indictment against you, you would have the right to a trial

22   before a jury because a couple of the charges against you,

23   in 18 U.S.C. Sections 1752(a)(1) and 1752(a)(2), each carry

24   a term of imprisonment of up to one year, and are Class A

25   misdemeanors.

1          So if you went to trial on all the charges against

2     you, 12 citizens from the District of Columbia would sit in

3     the jury box in this courtroom and determine your guilt or

4     innocence based upon the evidence presented by the

5     government.

6          The specific charge to which you are entering a

7     plea of guilty today, at 40 U.S.C. Section 5104(e)(2)(g), is

8     a petty offense.  For the petty offense for a Class B

9     misdemeanor, it is not, on its own, subject to a jury trial

10    right; but by accepting the government's plea offer you are

11    effectively giving up your jury trial right on the other

12    charges in the indictment.

13         Do you understand that you have a right to plead

14    not guilty and to have a jury trial due to the other charges

15    against you in the indictment?

16         THE DEFENDANT:  Yes, Your Honor.  I do.

17         THE COURT:  If you did have a trial, you would

18    have a right to be represented by your lawyer at your trial,

19    and at every other stage in the proceeding; and, if

20    necessary, have the court appoint counsel for you.

21         Do you understand that?

22         THE DEFENDANT:  Yes, ma'am, Your Honor.  I sure do.

23         THE COURT:  If you have a trial, you would have

24    the right, through your lawyer, to confront and

25    cross-examine any witnesses against you.

```
1                    Do you understand that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Mr. Griffith, I see that you are

4    moving around.  I want you to focus on my questions, so will

5    you please settle down?

6              THE DEFENDANT:  Yes, ma'am.  Sorry, Your Honor.

7    My phone was dying, I apologize.

8              THE COURT:  All right.  Why don't you take a

9    minute to plug it in so that you can focus on the questions.

10   Let me know when you are ready.

11             THE DEFENDANT:  I am ready now.  Sorry, Your

12   Honor.

13             THE COURT:  If you had a trial, you would have the

14   right to question your own witnesses and the right to

15   subpoena them to require them to testify in your own

16   defense.  You would also have the right to testify and

17   present evidence on your own behalf if you wanted to.

18                   Do you understand that?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  You would not have to testify or

21   present any evidence at the trial if you did not want to

22   because you cannot be forced to incriminate yourself or

23   present evidence of your own guilt, and that cannot be used

24   against you.

25                   Do you understand that?
```

1    THE DEFENDANT:  Yes, Your Honor.

2    THE COURT:  You are presumed by the law to be

3    innocent; and, if you chose to go to trial, it would be the

4    government's burden alone to prove your guilt beyond a

5    reasonable doubt.

6    Do you understand that?

7    THE DEFENDANT:  Yes, ma'am.

8    THE COURT:  If you are went to trial or were

9    convicted, you would have the right to appeal your

10   conviction of guilt to the Court of Appeals and to have a

11   lawyer help prepare your appeal.

12   Do you understand that?

13   THE DEFENDANT:  Yes, Your Honor.

14   THE COURT:  Your plea agreement sets out a waiver

15   of appeal rights at pages 4 through 5, at paragraph 9B.

16   Do you understand that you are agreeing to waive

17   the right to appeal the conviction in this case on any

18   basis, including but not limited to claims that the statute

19   to which you are pleading guilty is unconstitutional, and

20   the admitted conduct does not fall within the scope of the

21   statute; and you are also agreeing to waive the right to

22   appeal the sentence in this case, including but not limited

23   to any term of imprisonment, fine, forfeiture, award of

24   restitution, term or condition of supervised release,

25   authority of the Court to set conditions of release, and the

1    manner in which the sentence was determined, except to the

2    extent the Court sentences you above the statutory maximum

3    or guidelines range determined by the Court, or you appeal

4    on the basis of ineffective assistance of counsel, as set

5    out verbatim in the plea agreement, at pages 4 through 5,

6    paragraph 9B.

7              Do you understand that?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Do you understand -- do you have any

10   questions you want to review with your lawyer about your

11   waiver of appeal rights set out in the plea letter in

12   pages 4 through 5?

13             THE DEFENDANT:  No, thank you, Your Honor.  I

14   fully understand.

15             THE COURT:  Do you understand that you are also

16   giving up your right to collaterally attack your conviction

17   and sentence including but not limited to a habeas petition,

18   under 28 U.S.C. Section 2255, except in some limited

19   circumstances set out in the plea letter, at page 5,

20   paragraph 9C?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  And do you understand that full

23   discovery has not yet been available -- made available to

24   you, and that by entering the guilty plea you will be

25   agreeing to forego the right to any further discovery or

1    disclosures of information not already provided at the time

2    of the entry of your guilty plea, which is set out in your

3    plea letter on page 4, paragraph 9A?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  Do you understand that, if you plead

6    guilty in this case and I accept your guilty plea, you will

7    give up all the rights I have just explained to you and

8    there will be no trial?

9            THE DEFENDANT:  Yes, Your Honor.

10           THE COURT:  Now, the government has provided a

11   document called Statement of Offense.

12           Can you hear me?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  All right.  Well, I have just lost

15   video of you.  But please -- I will ask the government

16   attorney and Ms. Shaner, please let me know if you can't

17   hear me.  I cannot see you.

18           Could you call Mr. Cramer?

19           I am calling my IT person because this is

20   annoying, to say the least.

21           MS. SHANER:  Your Honor.

22           THE COURT:  Yes.  Ms. Shaner, can you see me?

23           MS. SHANER:  I can see you.  And he is visible, as

24   is the government.  Everyone is visible on my screen.

25           THE COURT:  Interesting.

1          Okay.  On one of the screens in the courtroom --

2     we only have ten -- I can see you, Ms. Shaner.  I don't know

3     why the rest of the machines have gone on the blink.

4          Okay.  So at least I can see you all on one screen

5     in the courtroom.

6          Okay.  So back to the Statement of Offense.

7          Okay.  The Statement of Offense describes what the

8     government would be prepared to prove at trial in support of

9     the charges against you, Mr. Griffith.

10          Have you read this document and discussed it fully

11     with your attorney?

12          THE DEFENDANT:  Yes, Your Honor.  I have.

13          THE COURT:  All right.  I'm looking at page 6 of

14     the Statement of Offense, and I see a signature that looks

15     typed in.

16          Did you apply that signature to the document?

17          THE DEFENDANT:  I did electronically, Your Honor.

18          THE COURT:  I see.  All right.

19          And you did that on July 28, 2021?

20          THE DEFENDANT:  Yes, ma'am, Your Honor.

21          THE COURT:  Okay.  Does the Statement of Offense

22     truly and accurately describe what you did in this case,

23     Mr. Griffith?

24          THE DEFENDANT:  Yes, ma'am, Your Honor.

25          THE COURT:  Just one second.

1          Ms. Gumiel, could you put this on gallery so it's

2    not popping back and forth between the person who is

3    speaking?

4          I will ask my law clerk.  Graham, could you help

5    her put it on gallery?

6          Okay.  Thank you.

7          All right.  Mr. Griffith, did you, in fact,

8    parade, demonstrate, or picket in the U.S. Capitol Building

9    on January 6th, 2021, knowing at the time you entered the

10   Capitol Building that you did not have permission to do

11   that?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  And did you, in fact, travel from

14   Tennessee to Washington, D.C., on January 5, to attend a

15   rally on January 6, 2021, protesting the results of the 2020

16   presidential election?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  And did you, in fact, attend the

19   Stop the Steal rally and then walk on the restricted grounds

20   of the U.S. Capitol Building?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  And when you walked onto the

23   restricted grounds of the U.S. Capitol Building, did you

24   know you were not supposed to be there?

25         THE DEFENDANT:  Yes, Your Honor.

1            THE COURT:  Did you, in fact, spend time in the

2     crowd, by the inauguration stage of the U.S. Capitol

3     Building, and observe members of the crowd attacking law

4     enforcement officers as they tried to keep the crowd away

5     from the building and out of the building?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  Did you, nonetheless, enter the

8     Capitol Building through a door that had been broken open,

9     knowing that you were not authorized to enter the Capitol

10    Building?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  And did you, in fact, wander inside

13    the Capitol Building into the crypt of the Capitol?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  And did you admit on Facebook postings

16    that you helped storm the Capitol today, but it only made

17    things worse?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  And did you also talk to a FOX News

20    crew --

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  -- talking about your entry into the

23    Capitol Building on January 6th?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  All right.  So Ms. -- I am going to

1    ask the government to please state the elements of the

2    charge against the defendant.

3              And, Mr. Griffith, I want you to listen carefully

4    because I have to make sure you understand fully the charge

5    against you.

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Ms. Jafary-Hariri, could you please

8    describe the elements of the charge to which Mr. Griffith

9    intends to enter a plea of guilty?

10             MS. JAFARY-HARIRI:  Yes, Your Honor.

11             Under 40 U.S.C. Section 5104(e)(2)(g), we would

12   have to prove that an individual willfully and knowingly

13   paraded, demonstrated, or picketed in the Capitol Building.

14             THE COURT:  And, Mr. Griffith, do you have any

15   question about the charge against you?

16             THE DEFENDANT:  No, ma'am, Your Honor.

17             THE COURT:  All right.  The parties have submitted

18   a plea agreement dated July 13th, 2021.

19             And again, Mr. Griffith, your signature looks like

20   a typed signature.  Again, is that -- was that a signature

21   that you applied to the document electronically?

22             THE DEFENDANT:  Yes, ma'am.  It sure is.

23             THE COURT:  And did you do so on July 28th, 2021?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  I will ask the government attorney:

1    Does this plea agreement reflect the most lenient plea offer

2    made to Mr. Griffith in this case?

3              MS. JAFARY-HARIRI:  Yes, Your Honor, it does.

4              THE COURT:  All right.  I just have a couple of

5    questions about the plea agreement.  I know judges have

6    little to no role in determining the contours of any

7    agreement that the government and a defendant decide would

8    be an appropriate resolution to the case, but I still have

9    questions that I can ask.

10             This is a charge -- this plea agreement allows

11   Mr. Griffith to resolve the case by pleading guilty to a

12   Class B misdemeanor, which is a petty offense; is that

13   correct?

14             MS. JAFARY-HARIRI:  That's correct, Your Honor.

15             THE COURT:  And the classification of a petty

16   offense is one that applies to a person who trespasses in a

17   national park after dark, for example, when it's closed, or

18   a person is stopped for a DUI in a national park; those are

19   the ilk of petty offenses in this case -- the ilk of petty

20   offenses.

21             So does the government -- I am just curious.

22             Does the government have any concern, given the

23   factual predicate at issue here --of the defendant joining a

24   mob, breaking into the Capitol Building through a broken

25   door, wandering through the Capitol Building, and stopping

1   the constitutionally mandated duty of the Congress and

2   terrorizing members of Congress and the Vice President that

3   had to be evacuated.

4           Does the government -- agreeing to a petty offense

5   plea in the case -- have any concern about deterrence either

6   of this defendant or other defendants?  That's a

7   circumstance that arises every four years.

8           I am giving you an opportunity to explain a plea

9   to a petty offense in this case.  Do you want to address

10  that?

11          MS. JAFARY-HARIRI:  Yes, Your Honor.

12          We certainly do have an interest in deterring

13  these types of offenses.  And in this case we conferred with

14  the defense counsel and, as the agreement states, the

15  defendant came forward early on to plea.  He has stated in

16  the plea agreement that he is going to cooperate and confer

17  with law enforcement about the offense; and we have

18  determined that, in this case, we would be willing to

19  resolve it this way.

20          THE COURT:  All right.  Well, as to the

21  cooperation agreement, this is not really -- you are saying

22  it's a cooperation agreement; but it's not really a full

23  cooperation agreement, is it; I mean, of the nature that's

24  typically included in a plea agreement, is that correct?

25          MS. JAFARY-HARIRI:  Yes, Your Honor.

1        If I was not clear, I did not mean that there was

2     a formal cooperation agreement.  I was simply referring to --

3            THE COURT:  I mean, usually, real cooperation

4     agreements mean that the defendant agrees to testify at a

5     trial, testify before the grand jury.  That's not in this

6     cooperation agreement, is it?

7            MS. JAFARY-HARIRI:  No, Your Honor, it is not.

8     You are correct.

9            THE COURT:  Usually cooperation agreements also

10    require that the defendant tell the truth and the whole

11    truth or else the plea agreement goes up in smoke.  That's

12    not in this plea agreement, is it?

13           MS. JAFARY-HARIRI:  No.  That is not in this

14    agreement.

15           THE COURT:  So in this cooperation term, the

16    defendant has to agree to be interviewed by law enforcement

17    and to hand over to law enforcement a phone that might have

18    social media on it for law enforcement to look at the social

19    media.  That's about it, right?  Those two things, that's

20    the extent of the cooperation; is that right?

21           MS. JAFARY-HARIRI:  Yes, Your Honor.

22           THE COURT:  So, even in turning over the phone to

23    law enforcement, there is no requirement in this cooperation

24    agreement that the defendant actually assist law enforcement

25    by pointing out that there might be evidence on the phone;

1    is that right?

2              MS. JAFARY-HARIRI:  Yes, Your Honor.

3              THE COURT:  So the cooperation -- saying it's a

4    cooperation agreement, it's a limited -- far more limited

5    than the normal cooperation agreement; am I right?

6              MS. JAFARY-HARIRI:  Yes, Your Honor.  And when I

7    used the term "cooperation," I did not mean to imply that

8    there was a cooperation agreement.

9              THE COURT:  Okay.

10             MS. SHANER:  Your Honor, if I may.

11             THE COURT:  Yes, Ms. Shaner.

12             MS. SHANER:  Prior to the entry of the plea

13   agreement, law enforcement met with Mr. Griffith and

14   interviewed him, which he did voluntarily and without

15   counsel present.

16             He also turned over his cell phone and devices,

17   and he voluntarily gave to law enforcement the PIN so that

18   they would have no problem reviewing his phone.  And this

19   plea was offered to Mr. Griffith only after law enforcement

20   had an opportunity to review his social media; and they then

21   determined that he was not, in fact, involved with any

22   terrorist groups or any supremacist groups.  And they did

23   not believe that he was involved in any criminal acts beyond

24   entering and leaving the Capitol, otherwise, they never

25   would have offered him this plea.

1          THE COURT:  All right.  Ms. Shaner, could you

2     briefly summarize the terms of the plea agreement?

3          MS. SHANER:  Yes, Your Honor.

4          Mr. Griffith will enter a plea to Count 5 of the

5     indictment, charging him with:  Parading, demonstrating, or

6     picketing in a Capitol Building, in violation of Title 40,

7     Section 5014(e)(2)(g) [sic].

8          He understands that the maximum sentence is six

9     months, a fine of not more than $5,000, and an obligation to

10    pay restitution in the amount of $500.

11         The government will dismiss the other pending

12    charges.  If the government wishes Mr. Griffith to speak

13    with law enforcement further, he has agreed to speak with

14    law enforcement at any time.  And -- that's it.

15         THE COURT:  You say "at any time."

16         I thought that the cooperation agreement was that

17    he would be willing to allow law enforcement to interview

18    him regarding the events in and around January 6, 2021,

19    prior to the entry of the guilty plea; so he has no

20    obligation to talk to law enforcement after today.

21         Am I reading that incorrectly, Ms. Shaner?

22         MS. SHANER:  No.  You are reading that correctly,

23    Your Honor.

24         THE COURT:  Right.  So cooperation not involving

25    any kind of testimony, not involving any grand jury

1    testimony, not involving any obligation to talk to law

2    enforcement after today; that's what this cooperation

3    agreement holds.

4            Am I correct on that, Ms. Shaner?

5            MS. SHANER:  That is correct.

6            However, Mr. Griffith, as every citizen of the

7    United States, would have to comply to a subpoena should law

8    enforcement believe he was a witness to, and they sought his

9    testimony.

10           This plea does not relieve him of that obligation,

11   which every citizen of the United States bears.

12           THE COURT:  All right.  And one other key term.

13           The government has estimated that the damages to

14   the U.S. Capitol resulting from the January 6th mob attack

15   is approximately $1,495,326.55, as estimated as of May 17,

16   2021.  And Mr. Griffith has agreed, as part of the plea, to

17   pay restitution in the amount of $500.

18           I don't think we got that far, Ms. Shaner.

19           Is that correct as well?

20           MS. SHANER:  That is correct.

21           THE COURT:  All right.  So, Mr. Griffith, do you

22   have any questions about the plea agreement, or do you feel

23   that you have been able to review it fully with Ms. Shaner?

24           THE DEFENDANT:  I feel like I have adequately

25   reviewed it.  Thank you, Your Honor.

1          THE COURT:  All right.  If I accept your guilty

2     plea in this case, Mr. Griffith, the penalty that you could

3     receive is a maximum sentence of six months under 40 U.S.C.

4     Section 5104(e)(2)(g), and 5109(b).

5          The sentencing guidelines do not apply to petty

6     offenses such as this.  A super -- you would also be subject

7     to a supervised release term of up to one year if you were

8     sentenced to a term of imprisonment; a maximum fine of

9     $5,000, and a special assessment of $10, which applies to

10    one count of the indictment to which you are entering a plea

11    of guilty, and a fine sufficient to pay the federal

12    government the cost of any imprisonment, term of

13    supervision, or period of probation.

14         Do you understand that those are the statutory

15    penalties that apply in your case?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Do you also understand that, as part

18    of your plea agreement, you agree to pay restitution to the

19    Department of the Treasury in the amount of $500 for the

20    damages -- estimated damages done to the U.S. Capitol

21    Building?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  And do you also understand that

24    because of your conviction you may be subject to forfeiture

25    of any property sufficiently connected to your offense or

1     proceeds derived from your offense?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  In determining your sentence, I am

4     also obligated to consider other sentencing factors under

5     18 U.S.C. Section 4553(a), which requires that judges

6     consider the nature and circumstances of the offense; your

7     history and characteristics, Mr. Griffith; the need for the

8     sentence imposed to reflect the seriousness of the offense;

9     promote respect for the law; provide for just punishment for

10    the offense; afford adequate deterrents to criminal conduct;

11    protect the public from further crimes by you, Mr. Griffith;

12    the kinds of sentences available; and the need to provide

13    restitution to any victims of the offense.

14          Do you understand that I must consider all of

15    these factors in determining the appropriate sentence in

16    your case?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  And do you understand that you will

19    have no right to withdraw your plea simply because your

20    sentence may be more severe than you would have liked?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Has anyone, including your attorney,

23    the police, a prosecutor, or any other law enforcement

24    agents with whom you have come in contact with since your

25    arrest promised or suggested to you that merely because you

1    are pleading guilty I will give you a lighter sentence in

2    this case?

3              THE DEFENDANT:  No, Your Honor.

4              THE COURT:  Has anyone forced, threatened, or

5    coerced you in any way into entering this plea of guilty?

6              THE DEFENDANT:  No, Your Honor.

7              THE COURT:  Are you entering the plea of guilty

8    voluntarily and of your own free will because you are guilty

9    and for no other reason?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  How do you now plead to the charge of

12   Count 5 in the indictment; guilty or not guilty?

13             THE DEFENDANT:  I plead guilty, Your Honor.

14             THE COURT:  I am satisfied that the defendant,

15   Jack Jesse Griffith, is fully competent and capable of

16   making a decision today; that he understands the nature of

17   the charges and the consequences of the plea; that the plea

18   of guilty is knowing and voluntary; and that he is acting of

19   his own free will, and that there is an adequate factual

20   basis for his plea.  Therefore, the plea is accepted; and he

21   is now adjudged guilty of the offense.

22             I would propose a sentencing date now for

23   October 8, which is a Friday, at 9:30 a.m.

24             Would you all check your availability for that date?

25             MS. JAFARY-HARIRI:  I am available.

1          THE COURT:  Actually, I am going to move this.  I

2    just noticed that I am actually going to be in trial that

3    week.

4          Could you move it -- can you check your calendar

5    for October 15th?

6          MS. JAFARY-HARIRI:  Okay.

7          THE COURT:  Ms. Shaner?

8          MS. SHANER:  Your Honor, I am available.

9          THE COURT:  Okay.  I am going to put this down for

10   11 a.m. for sentencing on that day.

11          Is the government available that day,

12   October 15th?

13          MS. JAFARY-HARIRI:  Yes, Your Honor.

14          And if I may inquire, will this be in person or

15   via video?

16          THE COURT:  This will be in person.

17          MS. JAFARY-HARIRI:  Thank you.

18          THE COURT:  All right.  Does the government have

19   any objection to allowing the same pretrial release

20   conditions to apply for Mr. Griffith while he is pending

21   sentencing?

22          MS. JAFARY-HARIRI:  No objection, Your Honor.

23          THE COURT:  All right.  So, Mr. Griffith, you will

24   be subject to the same conditions of release that you

25   were -- have been subject to already.

 1          I am also required to caution you about your

 2    conduct during this period prior to sentencing after you

 3    have entered a plea of guilty.

 4          You are required to appear here for sentencing on

 5    the sentencing date of October 15th.  Failure to appear as

 6    required is a separate criminal offense for which you could

 7    be sentenced to imprisonment.

 8          If you violate any of the conditions of your

 9    release, you could be subject to revocation of the release

10    and a separate prosecution for contempt of court.

11          Further, if you are convicted of an offense -- a

12    new offense -- while you are on release, then, in addition

13    to any sentence imposed for that offense, you could be

14    sentenced up to one year with a consecutive sentence --

15    meaning a piled-on sentence -- due to having committed on

16    release, pending sentencing, a new offense.

17          Do you understand that?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  All right.  Is there anything further

20    today from the government or from Ms. Shaner?

21          MS. JAFARY-HARIRI:  Nothing from the government.

22          Thank you, Your Honor.

23          THE COURT:  Ms. Shaner.

24          MS. SHANER:  Yes, Your Honor.

25          I believe the Court needs to inquire of

1    Mr. Griffith about his signature on the waiver of trial by

2    jury.

3              THE COURT:  Thank you, Ms. Shaner.

4              That was one document I didn't get to here.

5              So, Mr. Griffith, I am also looking at the waiver

6    of trial by jury which states:  With the consent of the

7    United States Attorney and approval of the Court, the

8    defendant waives his right to trial by jury, which is --

9    which doesn't really apply to the count to which you are

10   entering a plea of guilty because it's a petty offense which

11   does not apply to a trial by jury, but it does apply to the

12   other charges against you.  And I see that that signature

13   also looks like it's typewritten.

14             Is that a signature that you applied using

15   electronic means, Mr. Griffith?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  All right.  Thank you.

18             If there is nothing further, you are all excused.

19             THE DEFENDANT:  Enjoy your day, Your Honor.

20             THE COURT:  You too.

21             THE DEFENDANT:  Thank you.

22             THE COURT:  Bye.

23             (Whereupon, the proceeding concludes, 10:08 a.m.)

24

25

## CERTIFICATE


I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings to the best of my ability.

PLEASE NOTE:  This hearing was held via videoconference and telephonically in compliance with the COVID-19 pandemic stay-safer-at-home recommendations and is therefore subject to the limitations associated with the use of technology, including but not limited to telephone signal interference, static, signal interruptions, and other restrictions and limitations associated with remote court reporting via telephone, speakerphone, and/or videoconferencing capabilities.

This certificate shall be considered null and void if the transcript is disassembled and/or photocopied in any manner by any party without authorization of the signatory below.


Dated this 2nd day of August, 2021.


/s/ Elizabeth Saint-Loth, RPR, FCRR
Official Court Reporter